143 So. 5

SHREVEPORT PRODUCING & REFINING CORPORATION v. CITY OF SHREVE-PORT.

No. 29044.

April 25, 1932.

Rehearing Denied June 20, 1932.

B. F. Roberts, A. M. Pyburn, and Fred Simon, all of Shreveport, for appellant.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellee.

OVERTON, J.

This is a suit to recover from defendant $3,138.51, with legal interest thereon from May 22, 1925. The suit is based upon an assignment made by E. J. Deas Company, Inc., to plaintiff, in consideration, it is alleged, though not proved, for indebtedness due plaintiff by the assignor for gasoline and oil purchased and used on what is termed the Bayou Pierre sewer contract; a contract entered into by the assignor with defendant. The assignment reads as follows:

"Shreveport, La., May 22, 1925.

"To the City of Shreveport:

"Upon completion of final estimate Bayou Pierre Sewer, please pay to the Shreveport Producing & Refining Corporation, or order, three thousand one hundred thirty-eight dollars, fifty-one cents ($3,138.51) same to be charged to our account and deducted from final estimate Bayou Pierre Sewer Contract.

"[Signed] E. J. Deas Company, Inc.

"By E. J. Deas, Pres.

"Approved

"J. P. Dixson, Commissioner of Finance,

"S. G. Wolfe, Secretary-Treasurer."

"This assignment accepted to cover account in full to this date, of E. J. Deas Co., Inc.

"[Signed] Shreveport Prod. & Refg. Co.,

"By Bradford Hearn, Sec'y. Treas."

Defendant answered by denying the binding effect of the assignment on the ground that it is only a partial assignment, and thereby divides the debt due the assignor without the consent of the debtor; by denying that the assignment had been accepted; by denying that the officers who approved the assignment had authority to bind the defendant thereby; by averring that the assignor did not fully complete the contract mentioned in the assignment; by averring that defendant had no funds in its hands subject to assignment; and by averring that liens for the construction of the work had been filed in excess of the amount of the balance due on the contract.

There were two trials of the case. On the first trial there was judgment for defendant. Plaintiff, however, obtained a new trial. Upon the granting of the new trial, defendant deposited in court all of the funds in its

hands due under its contract with the assignor, and provoked, by a distinct proceeding, a concursus, citing, among the known claimants to the fund, the plaintiff herein. An effort was then made by defendant to consolidate the present suit with the concursus proceeding, but this effort failed. On the second trial, defendant offered in evidence the concursus proceeding to show that the liens and claims against the fund for material and labor were in excess of the balance due on the contract, but, upon plaintiff's objection, the evidence was excluded. The second trial resulted in a judgment for plaintiff for the full amount of its claim.

We find it unnecessary to consider·all of the points urged by defendant. The assignment was made against a fund arising from a contract between E. J. Deas Company, Inc., the assignor, and defendant, calling for the construction of a public work, namely, a sewer line for defendant, a municipal corporation. The work was done under Act No. 224 of 1918, relative to contracts for public works. The act, in effect, devotes primarily the fund arising from the contract to the payment of those performing labor on, or furnishing material in, the construction of the work, and provides that, where such persons file sworn statements of the amounts due them with the public authority having the work done, and cause such statements to be recorded in the mortgage records, at any time after the maturity of their claims, any payment by such authority, without deducting the amount of the claims, so served upon it, shall be at its own risk.

It follows from the foregoing that unpaid laborers and materialmen, at least, upon complying with the law, relative to the giving of notice and the recordation of their claims, have rights in the fund. This being so, it follows that the contractor, who is liable to such persons for their claims, cannot assign the contract price, or any part of it, to the prejudice of such claims. Under no circumstances therefore can the assignment of the whole or a part of the contract price be considered anything more, although not expressed, than an assignment of what is due the contractor, after the payment of all such claims, up to the amount stated in the assignment. The rights of laborers and materialmen cannot be disregarded by giving the assignment any greater effect, and, as to the municipality, having the work done, it should not honor an assignment to the prejudice of such claimants, for being a public body, created for the public welfare, it should not penalize itself at the expense of the taxpayers to accommodate a contractor. Such penalizing must necessarily be the result, under section 2 of the Act of 1918, where payment is made without deducting the amount of claims served upon the municipality.

Before a judgment is rendered against a municipality upon such an assignment, it should appear that there are no unsatisfied claims filed and recorded against the fund. The burden is upon the assignee to show this. In the present case, the plaintiff or assignee has not discharged this burden, nor has it made any attempt to do so. What little evidence there is in the record, touching this question, is suggestive of the fact that there are such claims, and this is re-enforced by the fact that the city, after this suit was filed, provoked a concursus.

In our view, plaintiff has not established its right to be paid any part of the fund assigned to it, and should be nonsuited.

 If there were recorded claims against the fund when plaintiff filed its suit, it should have provoked, upon the failure of defendant to have done so within the prescribed time, a concursus, as provided in sections 4 and 5 of Act No. 224 of 1918, citing all parties in interest to present and litigate their claims. If there were no such claims against the fund, plaintiff, especially as it could acquire no greater rights by the assignment than the contractor had in the fund, should have alleged and proved that there were no recorded claims against it. To omit the concursus where there are recorded claims against the fund, not only defeats, in part, the purpose of the act by bringing about a multiplicity of suits, but has a direct tendency to destroy the rights of other claimants in the fund. In interpreting this phase of the Act of 1918, in Mahoney v. Louisiana Highway Commission, 154 La. 383, 97 So. 582, 583, it was said:

"In our view, the act does not contemplate, when there are claims against the indebtedness due the contractor, that the contractor, or the owner of the claim, whether the owner should be a corporation in the hands of a receiver or not, may, without provoking a concursus, sue the authorized representative of the state, or the municipality, or public board, as the case may be, for the money due on account of the contract. When there are claims against the indebtedness, a concursus must be provoked, to the end that the claims of all may be adjusted, and the rights of the various claimants, as against each other, and as against all concerned, may be determined. To permit the contractor or the receiver to sue, when there are such claimants, with their claims of record, without provoking such a concursus, would be contrary to the very purpose of the act."

And in Seal v. Gano, 160 La. 636, 107 So. 473, 475, referring to the same phase of the Act of 1918, it was said that:

"The very purpose of the act was to provide a special, speedy, and summary remedy to enable the authorities letting the work, or, on their default, any creditor of the contractor, to bring all parties concerned and having an interest together before one court and in one proceeding, to the end that their respective rights as between themselves and as against the contractor and his surety might be recognized and adjusted. * * *

"And, moreover, such a construction as contended for would afford the more energetic creditor the opportunity of collecting his claim and, perhaps, exhaust the liability of the surety to the injury of all other claimants.

"It would destroy the right of all creditors to share ratably and in proportion to the amount of their claims in the common fund, the obligation of the surety on the contractor's bond, and would open the door to fraud and unfair and undue preferences."

The case of Baker v. City of Shreveport, 165 La. 391, 115 So. 631, cited by plaintiff, though presenting issues similar in many respects to those presented in this case, is easily differentiated from it. Not only were the views here expressed not considered, but there was no occasion to consider them. In that case, the surety company, under separate agreements of indemnity, agreed to protect the city against the claims of the contractor or his creditors, received from the city the

funds remaining in the latter's possession, and undertook the defense of the suit. The case was apparently presented and tried upon the theory that recovery could be had only out of the surplus remaining after the payment of prior liens and claims against the fund. This appears from the character of the acceptance of the assignment sued upon, and the statement made in the opinion showing a balance in the hands of the city, due the contractor, after deducting the cost of completing the work and the liens filed against it, more than sufficient to pay the assignee. The city was only a nominal party to the suit; the actual controversy being between the plaintiff and the intervening surety company. The case is not pertinent here.

We may suggest that plaintiff may assert its rights in the concursus that has been provoked, if not too late, or allege and show that there are no outstanding claims filed and recorded against the fund, if any part of the fund be still in existence.

For these reasons, the judgment is set aside and plaintiff's demand is dismissed, as in case of nonsuit, at its costs in both courts.